UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

LAWRENCE DAVIS,

        Defendant.
_____/

CRIMINAL NO. 17-cr- 20439

HON. LAURIE J. MICHELSON

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR BRADY MATERIALS (22)

For the reasons explained in the accompanying brief, Defendant Lawrence Davis' motion for *Brady* materials should be denied.

Respectfully submitted,

DANIEL L. LEMISCH
Acting United States Attorney

Dated: October 20, 2017

*s/Mark S. Bilkovic*
Mark S. Bilkovic
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Mark.bilkovic@usdoj.gov
313.226.9623

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                      Plaintiff,

vs.

LAWRENCE DAVIS,

                      Defendant.
_____/

CRIMINAL NO. 17-cr- 20439

HON. LAURIE J. MICHELSON

## **GOVERNMENT'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION FOR DISCLOSURE OF BRADY MATERIALS (22)**

### **I.    INTRODUCTION**

The government has provided Defendant, Lawrence Davis, with substantial discovery. Davis now seeks additional discovery that has 1) already been provided or, 2) is not required to be provided to the defense at this time. As a result, the defendant's motion should be denied.

### **II.   FACTS AND BACKGROUND**

The victim was found dead in his home in Berkley on September 20, 2016. The autopsy and toxicology reports show that the victim died of a Fentanyl overdose. The victim's mother (SOI-1) told authorities that she and the victim were both heroin addicts. SOI-1 admitted that the night before the victim was found

deceased, SOI-1 called Davis on his phone and told him she wanted to come to Detroit to purchase $40 of heroin from him. SOI-1 then travelled from Berkley to Detroit, where she purchased a small amount of what she believed was heroin, from Davis. SOI-1 stated that she and the victim had purchased heroin from Davis numerous times before.

After making the purchase from Davis, SOI-1 drove back to the victim's house and gave him the controlled substance. The victim ingested the controlled substance and after doing so, told SOI-1 that he felt funny. SOI-1 and the victim both fell asleep. When SOI-1 woke up early the following morning, she found the victim deceased, lying on the floor.

In December 2012, DEA agents conducted a controlled purchase from Davis using a confidential informant (CI). In the presence of agents, the CI called Davis and arranged to purchase $50 of heroin. Davis directed the CI to meet him in the same area that SOI-1 had purchased controlled substances from Davis. The CI met with Davis, who then sold the CI a small amount of controlled substance that tested positive for heroin. Davis was indicted on June 27, 2017.

The government has provided significant discovery to Davis including the following:

*June 15, 2017*

- 69 pages including Autopsy Protocol, Toxicology Report, City of Berkley police report, crime scene photographs, State of Michigan search warrant and affidavit, Oakland County Sheriff office report, four DEA-6 reports.

- Phone records including cell site information, PowerPoint showing call activity from September 19, 2016.

*September 15, 2017*

- Federal Search Warrant and Affidavit, 2703d Application and Orders, Forensic Report of controlled purchase, Lawrence Davis Criminal History.

### III. ARGUMENT

**A. Defendant's Request for Impeachment Material**

Davis requests exculpatory *Brady* material and any impeachment evidence in the government's possession and requests that the Court order the government to provide this material to him within the next 30 days. The government is aware of its burden to provide exculpatory evidence and information in its possession or control to Davis. The government has, and will continue, to disclose any evidence and information that fits within this category.

The government is also aware of its obligations under *Giglio* and will comply with its obligation to provide Davis with any exculpatory and impeachment material

4

in time for effective use at trial. However, the government is not required to provide impeachment evidence to Davis in the timeframe that he requests. The government has previously informed Davis's counsel that all *Jencks* material and *Giglio* impeachment material, including the criminal histories of witnesses, will be provided no later than 14 days prior to trial.

Neither the *Brady/Giglio* doctrine, the Jencks Act, 18 U.S.C. 3500, nor Fed R. Crim. P. 16 requires disclosure of impeachment material at this time. The government has not made a final decision regarding who its witnesses will be, let alone who are "key government witnesses" as specified by *Giglio*. *United States v. Mullins*, 22 F.3d 1365, 1372 (6th Cir. 1994) (*Giglio* only applies to witnesses who actually testify at trial because the basis for this requirement is that the information is relevant to impeach the witness, not that it is exculpatory of the defendant). And, it is black-letter law in the Sixth Circuit that *Giglio* impeachment evidence need only be disclosed "in time for use at trial" – *i.e.*, shortly before the key government witness testifies. *United States v. Crayton*, 357 F.3d 560, 568-69 (6th Cir. 2004) (no violation where *Giglio* material was produced just before the witness testified, after the government determined that it would call the individual as a witness).[1]

---

[1] The Sixth Circuit has even concluded that no *Brady/Giglio* violation exists where the disclosure was made during trial, as long as the defendant was not prejudiced by the in-trial disclosure. *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998); *United States v. Word,* 806 F.2d 658, 665 (6th Cir. 1986). This is because "the overriding [*Giglio*] concern [is] with the justice of the finding of guilt, not with the accused's ability to prepare for trial." *Norris*, 146 F.3d at 334.

5

Similarly, The Jencks Act, 18 U.S.C. § 3500,[2] is clear: "it requires production of impeachment material only after a 'witness has testified on direct examination in the trial of the case.'" *United States v. Fletcher*, 295 Fed. Appx. 749, 753 (6th Cir. 2008). An important underpinning of Congress' enactment of the Jencks Act was to ensure the safety of witnesses. *See United States v. Roberts,* 811 F.2d 257, 258-59 (4th Cir. 1987) (en banc); *United States v. Presser,* 844 F.2d 1275, 1285 (6th Cir. 1988) (in deciding a request for early pretrial disclosure, the Court held that it was important not to "vitiate an important function of the Jencks Act, the protection of potential government witnesses from threats of harm and intimidation before the witnesses testify at trial").

The government has legitimate concerns about witness safety and intimidation in this matter. The defendant is a street-level drug dealer and he is charged with distribution of a controlled substance resulting in death. Courts acknowledge the dangerousness of drug dealing by routinely affirming, on dangerousness grounds, the pretrial detention of run-of-the-mill drug dealers, even without evidence that the

---

[2] The relevant text of the statute states, "After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use." 18 U.S.C. § 3500(b).

drug dealer has engaged in violence. *United States v. Stone*, 608 F.3d 939, 947 n. 6 (6th Cir. 2010).

Additionally, Davis has multiple convictions, including felony convictions for possessing a weapon and possessing a stolen vehicle. In 2012, Davis was convicted of possessing a stolen vehicle. In that case, the victim reported that he was carjacked Davis was later arrested while driving the victim's vehicle.

In 2014, Davis defendant was convicted of possessing a dangerous weapon. In that incident, Detroit Police officers were on patrol near a gas station located on West Warren Ave. due to the high rate of armed robberies and carjackings that had occurred there. The officers pulled into the parking lot and observed Davis sitting in a vehicle. The officers could smell marijuana coming from the vehicle so the officers approached the vehicle. Davis was sitting in the driver's seat and he admitted he was in possession of brass knuckles. In the vehicle, officers also found skull cap/hat with cuttings of the eye, nose, and mouth areas.

There is simply no basis to require the government to disclosure of *Jencks* material more than 14 days prior to trial, where, as here, Davis is accused of an inherently dangerous drug crime, he is facing a lengthy prison term, and he has a prior felony record.

**B**. **Defendant's request for material pursuant to Fed. R. Crim. P. 16**

Defendant also requests material pursuant to Fed. R. Crim. P. 16(a)(1). Fed R. Crim. P. 16 provides for certain categories of documents and information that the government must provide upon defense counsel's request, including the defendant's oral statements, any relevant written or recorded statement of the defendant, and a copy of the defendant's criminal record. Fed R. Crim. P. 16 (a)(1)(A), (B), and (D). Other items, such as documents, records, and reports of examinations and tests are discoverable upon request if the item is within the government's possession, custody, or control, and is material to preparing the defense, or the government intends to introduce the item in its case-in-chief at trial. Fed R. Crim. P. 16 (a)(1)(E) and (F).

In requesting an item that a defendant contends is material to preparing a defense, a defendant cannot rely on conclusory allegations or on a general description of the requested information, but must make a *prima facie* showing of materiality to obtain the requested information. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). To be "material" under Rule 16, the requested information must have "more than ... [an] abstract logical relationship to the issues." *United States v. Ross*, 511 F.2d 757, 762 (5th Cir. 1975). "There must be some indication that the pretrial disclosure of the disputed evidence would … enable[ ] the defendant significantly to alter the quantum of proof in his favor." *Id.*

at 763; *see also United States v. Phillip*, 948 F.2d 241, 250 (6th Cir. 1991)(holding that, for a *Brady* analysis, "[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" and also "information withheld by the prosecution is not material unless the information consists of, or would lead directly to, evidence admissible at trial for either substantive or impeachment purposes")(quotations and citations omitted).

### C. Further Discovery

As stated, the government is aware of its obligations under *Brady* and *Giglio* and will comply with its obligation to provide exculpatory and impeachment material in time for effective use at trial. The government also intends to provide all *Jencks* and *Giglio* impeachment material to defense counsel 14 days prior to trial. This timeframe complies with the time requirements mandated by *Jencks* and *Giglio*. The timeframe also is well within the timeframe required by 18 U.S.C. § 3500, and Fed. R. Crim. P. 26.2, both of which do not require the government to produce any statement a witness has made until after that witness has testified on direct examination.

To the extent that disclosure of the information the defendant requested in paragraph 5 of his motion is required, the government intends to provide this material within the above timeframe. To the extent that the government is not

9

required to provide the information the defendant requested in paragraph 5 of his motion, either because it is not within the government's possession, custody or control, or because it does not fall within *Brady*, *Giglio,* The Jencks Act, or Fed. R. Crim. P. 16, the government does not intend to provide it. More specifically, the *Brady/Giglio* doctrine does not require the government to discover information it does not possess. *See United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) (holding that "*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess") (quoting *United States v. Beaver*, 524 F.2d 963, 966 (5th Cir.1975))

## IV.　CONCLUSION

Wherefore, the government respectfully requests that this Honorable Court enter an Order denying the defendant's motion.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | DANIEL L. LEMISCH<br>Acting United States Attorney |
| Dated: October 20, 2017 | *s/Mark S. Bilkovic*<br>Mark S. Bilkovic<br>Assistant U.S. Attorney<br>211 W. Fort Street, Suite 2001<br>Detroit, MI 48226<br>Mark.bilkovic@usdoj.gov<br>313.226.9623 |

CERTIFICATE OF SERVICE

I hereby certify that on Friday, October 20, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Andrew Densemo

                                        *s/Mark Bilkovic*
                                        Mark Bilkovic
                                        Assistant United States Attorney
                                        211 W. Fort Street, Suite 2001
                                        Detroit, MI  48226
                                        Mark.Bilkovic@usdoj.gov
                                        (313) 226-9623
                                        P48855